# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Zurich American Insurance
Company, et al.,

                  Appellants,     Case No. 1:20-cv-1594-MLB

v.

Henry C. Hardin, III,

                  Appellee.

_____/

## OPINION & ORDER

Appellants Zurich American Insurance Company, American Zurich Insurance Company, and The Zurich Services Corporation (collectively, "Zurich") appeal the Bankruptcy Court's denial of Zurich's motion for summary judgment. (Dkts. 1; 1-1.) The Court affirms the Bankruptcy Court's order.

## I.     Background

Zurich commenced an arbitration action against Professional Management Services Group, Inc. ("PMSG") to resolve disputes arising under the parties' workers compensation insurance program. (Dkts. 1-2

at 2; 27 at 15; 29 at 11.)   The arbitration panel entered an award requiring PMSG to (a) pay $16,307,224 in principal and interest and (b) post an additional $1,355,480 in collateral.  (Dkts. 1-2 at 3; 27 at 15; 29 at 11.)  The United States District Court for the Northern District of Illinois confirmed the award and entered a final judgment in favor of Zurich.  (Dkts. 1-2 at 2; 27 at 15.)  PMSG did not pay Zurich any of the arbitration award.  (Dkts. 1-2 at 3; 27 at 15; 29 at 11.)

Zurich then filed a complaint in the United States District Court for the Northern District of Georgia against Appellee Henry C. Hardin, III ("Hardin")[1] contending that, as the alter ego of PMSG, Hardin was responsible for PMSG's debt to Zurich.  (Dkts. 1-2 at 3; 27 at 16; 29 at 11–12.)  A jury trial commenced, and the Court instructed the jury as follows with respect to the alter ego claim:

> The concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party has disregarded the corporate entity such that the corporation has become a mere instrumentality of his or her own affairs, that there is such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and that the owner has overextended his or her privilege in the use of a corporate entity in order to defeat justice, perpetrate fraud or to evade contractual or tort

---

[1] The Court refers to this case as "the Alter Ego Case."

responsibility.   There must be evidence of abuse of the corporate form.

(Dkts. 1-2 at 3–4; 27 at 16; 27-1 at 351–52; 29 at 12.)  Both Zurich and

Hardin consented to the jury instruction.  (Dkts. 1-2 at 4; 27 at 16; 29 at

13.)  The agreed-upon jury instructions also included the following:

> A creditor may establish that an owner did so by showing that the owner engaged in certain conduct, for example, by showing (a) commingling of corporate and personal finances, (b) siphoning-off of corporate funds to pay personal expenses, (c) unsecured, interest-free loans from the corporation to the owner, (d) the plaintiff's inability to satisfy a legitimate debt if the corporate fiction is not disregarded, (e) when failure to disregard the corporate fiction would present an element of injustice or fundamental unfairness, (f) the defendant is a shareholder, director, and officer of the corporation, (g) the defendant exerts substantial if not exclusive control over the corporation, and (h) non-functioning of other officers or directors. No one of these factors is determinative, and not all of the factors are required.

(Dkts. 1-2 at 4; 29 at 12–13.)  On June 8, 2018, the jury returned a verdict

holding Hardin liable as the alter ego of PMSG and awarding Zurich

$18,102,582 in damages.  (Dkts. 1-2 at 4; 27 at 17; 29 at 13.)  The jury

completed a general verdict form as follows:

We answer the questions submitted to us as follows:

1. Is Henry Hardin the alter ego of PMSG?

   Yes ___✓___   No _____

(Dkt. 27-1 at 59.)  The Court thereafter issued a judgment on the verdict. (Dkts. 1-2 at 5; 27 at 17.)

In December 2018, Hardin filed a voluntary petition for bankruptcy under Chapter 7, Title II of the United States Code.  (Dkts. 1-2 at 5; 27 at 17.)  A few months later, Zurich initiated an adversary proceeding, contending that Hardin's debt for the June 2018 judgment is not dischargeable pursuant to 11 U.S.C. § 523(a)(6) and other grounds. (Dkts. 1-2 at 5; 27 at 17–18.)  Section 523(a)(6) excepts from discharge an individual's debts incurred by "willful and malicious injury by the debtor to another entity or to the property of another entity."  *See* 11 U.S.C. § 523(a)(6).  Zurich moved for summary judgment on the issue of whether § 523(a)(6) was satisfied as a matter of law based on the doctrine of collateral estoppel.  (Dkt. 27 at 18.)  Zurich claimed the doctrine bars Hardin from litigating whether he "willful[ly] and malicious[ly] injur[ed]" Zurich under § 523(a)(6) because the jury already answered that question in the affirmative.  (*Id.* at 13.)  Specifically, Zurich's argument is that (1) the jury returned a verdict against Hardin, which means it found (per the jury instructions) that Hardin "overextended his . . . privilege in the use of a corporate entity in order to defeat justice, perpetrate fraud or to

4

evade contractual or tort responsibility"; and (2) this conduct equates to causing "willful and malicious injury" to Zurich under § 523(a)(6).  (*Id.*)

The Bankruptcy Court rejected this argument and denied Zurich's motion for summary judgment.  (Dkt. 1-2 at 9–13.)  Zurich sought leave to appeal.  (Dkt. 2.)  This Court granted its request, thereby providing jurisdiction for this appeal.  (Dkt. 24.)  The appeal presents one issue: Did the Bankruptcy Court correctly find that the jury instructions and the general jury verdict finding Hardin was the alter ego of PMSG are insufficient to apply the doctrine of collateral estoppel to show a "willful and malicious injury" under 11 U.S.C. § 523(a)(6)?

## II.   Standard of Review

This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a)(3).  "In its appellate capacity, a district court may 'affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings.'"  *Choi v. Promax Invs., LLC*, 486 B.R. 541, 543 (N.D. Ga. 2012) (quoting Fed. R. Bankr. P. 8013). In its review, a district court is required to accept the bankruptcy court's factual conclusions unless they are clearly erroneous.  *Id.* (citing Fed. R.

Bankr. P. 8013). The bankruptcy court's conclusions of law are subject to de novo review. *In re Reider*, 31 F.3d 1102, 1104 (11th Cir. 1994).

Federal Rule of Bankruptcy Procedure 7056 makes Federal Rule of Civil Procedure 56 applicable to bankruptcy adversary proceedings. Fed. R. Bankr. P. 7056. Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* "The moving party bears the initial burden of establishing that no genuine factual issue exists." *In re High-Top Holdings, Inc.*, 564 B.R. 784, 791 (Bankr. N.D. Ga. 2017) (citations omitted). "Once the movant has met this burden, the burden shifts 'to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id.* (citation omitted).

## III.  Discussion

The doctrine of collateral estoppel "prevents the relitigating of issues already litigated and determined by a valid and final judgment in

another court." *In re Bilzerian*, 100 F.3d 886, 892 (11th Cir. 1996).[2]  It is universally recognized that collateral estoppel applies in a proceeding to determine the dischargeability of a debt in bankruptcy.   *Id.*; *see also Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991).  When determining the "preclusive effect of a federal judgment where the court exercised diversity jurisdiction," a court applies federal common law which "borrows the state rule of collateral estoppel."  *CSX Transp., Inc. v. Gen. Mills, Inc.*, 846 F.3d 1333, 1340 (11th Cir. 2017).  Here, because a federal district court sitting in diversity in Georgia rendered the judgment in the Alter Ego Case, the Court will apply the Georgia rules of collateral estoppel.

"Georgia law has not settled on a canonical list of elements to establish collateral estoppel."  *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1264 (11th Cir. 2011).  Courts therefore sometimes formulate the test differently, but they are the same in substance.  Under Georgia law, collateral estoppel applies when the following elements are met: "(1) identity of the parties is the same; (2) identity of the issues is the

---

[2] While federal courts primarily use the term issue preclusion, the Court refers to the doctrine as collateral estoppel because that is the term used by Georgia courts and the parties.

same; (3) actual and final litigation of the issue in question occurred; (4) the adjudication was essential to the earlier action; and (5) the parties had a full and fair opportunity to litigate the issues in question." *In re Lowery*, 440 B.R. 914, 922 (Bankr. N.D. Ga. 2010) (citation omitted). "The party seeking to invoke collateral estoppel bears the burden of proving that the necessary elements have been satisfied." *In re McWhorter*, 887 F.2d 1564, 1566 (11th Cir. 1989). The parties disagree as to only one element: whether there is an identity of issues between the jury's finding that Hardin was the alter ego of PMSG and the requirement that the debt he owes Zurich arose from his willful and malicious injury to Zurich. (Dkts. 1-2 at 9; 27 at 11, 21–23; 29 at 20.) Zurich maintains that the jury verdict in the Alter Ego Case—which, per the jury instructions, necessarily required a finding that Hardin overextended his privilege in the use of a corporate entity in order to defeat justice, perpetrate fraud, or evade contractual or tort responsibility—definitively established willful and malicious injury under § 523(a)(6). (Dkt. 27 at 13.)

Section 523(a)(6) of the Bankruptcy Code makes non-dischargeable any debt for "willful and malicious injury caused by the debtor to another

entity or to the property of another entity."  11 U.S.C. § 523(a)(6).  The Eleventh Circuit has defined "willful" and "malicious" within the meaning of § 523(a)(6).  *In re Kane*, 755 F.3d 1285, 1293–94 (11th Cir. 2014).  "A debtor is responsible for a 'willful' injury when he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury."  *Id.* at 1293 (quoting *In re Jennings*, 670 F.3d 1329, 1334 (11th Cir. 2012)).  And "'[m]alicious' means wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will."  *Id.* at 1294 (quoting *Jennings*, 670 F.3d at 1334).  For there to be identity of issues sufficient to apply collateral estoppel, the jury in the Alter Ego Case must have found Hardin's conduct met all elements of "willful and malicious injury."

## A.   Willful

Regarding willfulness, the Bankruptcy Court held that the jury found Hardin intentionally abused PMSG's corporate form.  (Dkt. 1-2 at 9–10.)  This Court agrees.  Based on the jury instructions given in the Alter Ego Case, the jury found that Hardin acted "in order to" achieve an unjust, fraudulent, or evasive act.  As Zurich notes, "in order to" means "for the purpose of" and "intentional" similarly means "purposeful."  (Dkt.

27 at 24.)  The Bankruptcy Court, however, held that the jury verdict did not establish the other part of willfulness—that is, it did not establish Hardin intended to cause injury to Zurich or knew his conduct was substantially certain to do so.  (Dkt. 1-2 at 10.)  According to Zurich, because the jury found Hardin acted "in order to defeat justice, perpetrate fraud[,] or to evade contractual or tort responsibility," the Court can only conclude, as a matter of law, "that Hardin intended such acts to ('in order to') cause injury ('defeat justice, perpetuate [sic] fraud or to evade contractual or tort responsibility'), or that he knew such acts would be substantially certain to cause injury."  (Dkts. 27 at 27; 33 at 12.)  As stated above, the Court agrees with Zurich that the "in order to" language in the jury instructions satisfies the intentional act element of willfulness.  But the Court disagrees that defeating justice, perpetrating fraud, or evading contractual or tort responsibility always purposefully causes injury.

In support of its argument, Zurich relies on two cases:  *In re Demps*, 506 B.R. 163 (Bankr. N.D. Ga. 2014), and *In re Ellerbee*, 177 B.R. 731 (Bankr. N.D. Ga. 1995).  (Dkts. 27 at 27–28; 33 at 12–13.)  The bankruptcy courts in both cases, however, had evidence from the prior

10

judgment to consider in applying § 523(a)(6).  In *Demps*, for example, the court emphasized that the testimony of the debtor at the arbitration

> shows she knew she was to bill and collect to reduce what was owed by South Fulton, that she intentionally did not bill and collect, that she destroyed records needed to establish amounts to bill and collect, and that she knew the result of those actions would be that South Fulton would pay her the full amount and it would be unable to reduce that obligation.

*Demps*, 506 B.R. at 173.  On such a record, it is no surprise the bankruptcy court concluded "the Debtor willfully intended to injure South Fulton."  *Id.*  Similarly, in *Ellerbee*, the bankruptcy court focused on the debtor's admissions in the prior case and found the debtor acted intentionally to inflict harm when he published defamatory statements. *Ellerbee*, 177 B.R. at 742 ("Ellerbee admitted that part of his motivation in publishing the statements was to strike back at Mills.  He admitted that the statements made tended to injure Mills' reputation.  He willed injury upon Mills and he did so because, he says, the statements were true.").

Here, the record is silent as to what exactly the jury found Hardin did and what his purpose was in doing so.  There is no testimony for the Court to consider.  There are no admissions from Hardin for the Court to consider.  The Court has only the jury instructions and the general jury

verdict.  Nothing in either suggests the jury found (or was required to find) Hardin committed "an intentional act the purpose of which [was] to cause injury to Zurich or which [was] substantially certain to cause injury to it." *Kane*, 755 F.3d at 1293.  The Court cannot assume the jury made such a finding.

The Court also rejects Zurich's argument that, because the jury awarded damages in its favor, the jury must have found Zurich suffered an injury.  (Dkt. 27 at 28.)  Even if that were true, injury alone is not enough.  For § 523(a)(6), the injury must be a "willful and malicious" one.  11 U.S.C. § 523(a)(6).  And the law is clear that willfulness under § 523(a)(6) requires an intentional act the purpose of (1) which is to cause injury or (2) which is substantially certain to cause injury.  *Kane*, 755 F.3d at 1293.  The award of damages is not dispositive of either.  As the Bankruptcy Court noted, the damages award merely shows Zurich presented evidence to the jury that PMSG owed it a debt.  (Dkt. 1-2 at 11); *Baillie Lumber Co. v. Thompson*, 612 S.E.2d 296, 301 (Ga. 2005) ("[W]here the corporate entity is disregarded, a principal found liable under an alter ego theory should be liable for the entirety of the corporation's debt.").  The alter ego finding merely passed liability for

12

that debt from PMSG to Hardin.  The focus of the trial (from the jury instruction at issue) was on Hardin's actions in relation to the purported alter ego (PMSG), not Hardin's actions in relation to Zurich.  *See id.* ("An alter ego claim is an assertion that 'there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist.'" (quoting *Farmers Warehouse of Pelham, Inc. v. Collins*, 137 S.E.2d 619, 625 (Ga. 1964))).  With § 523(a)(6), however, the focus is on Hardin's actions to Zurich: Section 523(a)(6) makes non-dischargeable any debt for "willful and malicious injury *caused by the debtor to another entity* or to the property of another entity."   11 U.S.C. § 523(a)(6) (emphasis added).  To pierce the corporate veil the jury merely had to find Hardin abused the corporate form, not that he did so for the purpose of injuring Zurich or that his acts would be substantially certain to cause such an injury.

The jury instructions and jury verdict do not satisfy the element of willfulness under § 523(a)(6).

### B.   Malicious

As stated above, malicious "means wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will."

*Kane*, 755 F.3d at 1294.  The Bankruptcy Court held that the jury found Hardin's conduct was wrongful.  (Dkt. 1-2 at 9–10.)  The Court agrees. Acting "in order to defeat justice, perpetrate fraud[,] or to evade contractual or tort responsibility" is, indeed, wrongful.  The Bankruptcy Court, however, found the jury verdict did not establish the other part of maliciousness—that is, it did not establish Hardin's conduct "was without just cause or excessive."  (*Id.* at 10.)

Zurich argues the Bankruptcy Court erred in this finding by assuming that "there could ever be 'just cause' for one to 'defeat justice, perpetrate fraud or to evade contractual or tort responsibility.'"  (Dkt. 27 at 28–29.)   Citing the dictionary as support, Zurich asserts "[b]y definition, and as a matter of law, injustice, fraud, and evasion are without just cause."  (*Id.* at 29.)  Despite claiming it is "a matter of law," Zurich cites no statute or case for this proposition.   And, more importantly, nothing in the jury instructions or jury verdict sheds any light on whether Hardin lacked an excuse for his conduct.  The Court cannot assume the jury considered whether Hardin had a justification for his conduct because "without just cause" is not a required element in an alter ego case.  *See Albee v. Krasnoff*, 566 S.E.2d 455, 460 (Ga. Ct. App.

14

2002) ("The concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party has overextended his privilege in the use of a corporate entity in order to defeat justice, perpetrate fraud, or evade contractual or tort responsibility." (citing *Commonwealth Fin. Corp. v. Sherrill*, 398 S.E.2d 438, 439 (Ga. Ct. App. 1990))).

Zurich argues the jury specifically found Hardin "overextended his privilege in the use of PMSG, which is by definition excessive." (Dkt. 27 at 29.) Zurich again cites the dictionary, which defines "overextend" as "to extend or expand beyond a safe or reasonable point." (*Id.*) This definition does not show "overextend" means "excessive." Moreover, the two words relate to different things. "Overextend" refers to an act—that is, overextending Hardin's privilege in the use of a corporate entity— while "excessive" modifies injury. *See* 11 U.S.C. § 523(a)(6) (requiring a "willful and malicious injury"); *Kane*, 755 F.3d at 1294 (defining malicious to mean "wrongful and without just cause or *excessive*" (emphasis added)). Again, nothing in the jury instructions or jury verdict suggests the jury considered, much less decided, it was an excessive injury.

15

For these reasons, the jury instructions and jury verdict do not satisfy the element of maliciousness under § 523(a)(6).

## C.   *In re Wallis*

In support of its arguments, Zurich relies heavily on *In re Wallis*, No. 09-06669-BGC-7, 2011 WL 2357365 (Bankr. N.D. Ala. Mar. 31, 2011). (Dkts. 27 at 12, 21, 29–31; 33 at 14–16.)  Zurich claims the Bankruptcy Court's order is directly at odds with *Wallis*, which, according to Zurich, considered the precise issue before this Court and determined an alter ego judgment satisfied the requirements of nondischargeability under § 523(a)(6).  (Dkt. 27 at 12, 29.)[3]

The Court disagrees.   In *Wallis*, the plaintiffs claimed a debt defendant Wallis owed was excepted from discharge under § 523(a)(6). 2011 WL 2357365, at *1.   They argued previous state court orders established nondischargeability as a matter of law and estopped defendants for arguing to the contrary.  *Id.* at *4.  The state court matters began when the plaintiffs sued Wallis and a corporation known as Karson Enterprises.  *Id.* at *1.  On the eve of trial, Karson consented a $1 million

---

[3] The Bankruptcy Court neither cited nor discussed *Wallis* in its order. (Dkt. 1-2.)

judgment against it.  *Id.*  The action against Ms. Wallis, however,
continued, and the plaintiffs asked the state court to pierce Karson's
corporate veil and hold Ms. Wallis responsible for the judgment against
the company.  *Id.*  After a hearing, the state court found Ms. Wallis to be
the alter ego of Karson and pierced the corporate veil.  *Id.*  The court
issued a lengthy order to explain its determination, including a finding
that:

> [i]n light of the facts of this case, the Court rules that Karson
> Enterprises was "set up as a subterfuge" and as a result,
> piercing the corporate veil to reach Defendant Wallis is
> appropriate.  The Court further holds that Karson
> Enterprises was conceived and/or operated for fraudulent
> purposes and was operated as "an instrumentality or alter ego
> of an individual or entity with corporate control." Accordingly
> the Court does not recognize a separate corporate existence of
> Karson Enterprises because it is "organized and controlled
> and its business conducted in such a manner as to make it
> merely an instrumentality of another."  In such instances, the
> corporation exists merely to evade its legal liabilities.
>
> The evidence before the Court indicates Defendant Wallis had
> more than an ample opportunity to discover that Defendant
> Karson Enterprises was being used as a conduit to avoid valid
> judgments against its predecessor entities and Mr. Estes, yet
> she nevertheless remained the sole member and continued to
> receive income generated from the business rather than
> repudiate her ownership and dissolve the company. Through
> a combination of illegal methods and wrongful means, this
> Court has concluded that Defendant Wallis has participated
> in a shell game to continually elude Plaintiffs and avoid
> paying any of the judgments previously entered against

> Karson Enterprises, its predecessors and Jaime [sic] Estes. As
> a result, it is proper to pierce the corporate veil of Defendant
> Karson Enterprises to reach Defendant Wallis personally.

*Id.* at *2–3 (internal citations omitted).

This decision provided the bankruptcy court plenty of information to consider in deciding whether the state court's order piercing the corporate veil also satisfied the requirements for nondischargeability under § 523(a)(6). *Id.* at *4. Because the state court applied Alabama alter ego law, the bankruptcy court looked to Alabama law to make that determination. *Id.* at *5. It found Alabama has three grounds for piercing the corporate veil[4] and the state court had applied the third ground—that is, "operation of the corporation as an instrumentality or alter ego." *Id.* at *10–12. The bankruptcy court referred to this ground as "domination" and explained:

> [W]here domination is the reason for piercing the corporate
> veil, something in addition to that control must be present
> before a court may pierce a corporate veil. That something is
> what directly links this factor for piercing of a corporate veil
> with the standards for denying dischargeableability for willful

---

[4] The three grounds are (1) inadequacy of capital; (2) fraudulent purpose in conception or operation of the business; or (3) operation of the corporation as an instrumentality or alter ego. *Id.* at *5. "[A] corporate veil can be pierced for any of the three reasons." *Id.* at *10.

> and malicious behavior, and it is what substantiates the identity of issues between the two.

*Id.* at \*12 (emphasis omitted).  The bankruptcy court emphasized that mere domination is not enough; there must be misuse of control and harm or loss must have resulted from it.  *Id.* Then, in a rather conclusory fashion, the bankruptcy court held "that before the state court could have pierced Karson's corporate veil, it had to find that the defendant intended to control the corporation, that this action was without just cause, and that this action was intended, as the state court found, to harm the plaintiffs." *Id.*

At the outset, the Court notes that *Wallis* is merely persuasive authority.  The Court is not bound by that opinion.  *Fox v. Acadia State Bank*, 937 F.2d 1566, 1570 (11th Cir. 1991); *Fishman & Tobin, Inc. v. Tropical Shipping & Constr. Co.*, 240 F.3d 956, 965 (11th Cir. 2001). The Court also finds *Wallis* distinguishable and thus disagrees with Zurich's assertion that it decides the "precise issue" before this Court. (Dkt. 27 at 12.)  First, in *Wallis*, the state court made specific findings of fact on every element required under § 523(a)(6).  The state court, for example, ruled that Karson was "set up as a subterfuge," Karson was "conceived and/or operated for fraudulent purposes and was operated as

19

'an instrumentality or alter ego of an individual or entity with corporate control,'" Ms. Wallis had "ample opportunity" to discover Karson "was being used as a conduit to avoid valid judgments," Ms. Wallis engaged in "illegal methods and wrongful means," and Ms. Wallis "participated in a shell game to continually elude [p]laintiffs and avoid paying any of the judgments" entered against Karson. *Wallis*, 2011 WL 2357365, at *2–3. These specific findings of fact—most notably that Ms. Wallis acted purposefully to elude the plaintiffs—contrast sharply with the general jury verdict in the Alter Ego Case here.  Zurich could have requested the jury make specific findings of fact like those in *Wallis* but did not.  *See* Fed. R. Civ. P. 49 (governing special and general verdicts).

Second, Alabama's alter ego law is different from Georgia's law. The domination ground under Alabama alter ego law clearly requires "something" in addition to corporate control to pierce the corporate veil. *See id.* at *12.  In its argument, Zurich places great weight on this "something" extra language and tries to transfer that concept to this case:

> The key finding in *In re Wallis* was that Alabama law required "something" in addition to corporate control to pierce the corporate veil . . . .
>
> Like Alabama law, Georgia law also requires "something" extra, in addition to corporate control.  Georgia law requires

that the "the owner has overextended his or her privilege in the use of a corporate entity in order to defeat justice, perpetrate fraud or to evade contractual or tort responsibility."  These acts intended to cause harm by defeating justice, perpetrating fraud, or evading contractual or tort responsibility are the very "something" extra described in *In re Wallis* that directly link the alter ego judgment with the standards for the willful and malicious provision, creating an identity of issues.

(Dkt. 27 at 30 (internal citation omitted).)  But Zurich misses the point. It is not that alter ego law requires "something" extra.  It is *what* that something *is*.  In Alabama, it is harm or loss, which are directly relevant to a "willful and malicious injury" as defined by the Eleventh Circuit. *Kane*, 755 F.3d at 1293–94.  The Court agrees Georgia alter ego law has "something" extra, in addition to corporate control (i.e., defeating justice, perpetrating fraud, or evading contractual or tort responsibility), but the Court does not find it equivalent, without more specific findings from the jury, to a "willful and malicious injury" under § 523(a)(6).  It would be different if Georgia alter ego law had an express requirement that harm or loss result from the defendant's actions that also led to piercing the corporate veil because then the jury would have had to consider that in reaching its verdict.

Overall, for the Alter Ego Case to have collateral estoppel effect in this bankruptcy action, it must be clear that the factual determinations made by the jury parallel the facts necessary to meet the federal standard of nondischargeability under § 523(a)(6).  *See, e.g.*, *In re Stover*, 88 B.R. 479, 483 (Bankr. S.D. Ga. 1988).  In this case, that is not clear with only the jury instructions and general jury verdict to consider.  Accordingly, the jury instructions and the general jury verdict finding Hardin was the alter ego of PMSG are insufficient to apply the doctrine of collateral estoppel to show a "willful and malicious injury" under 11 U.S.C. § 523(a)(6).

## IV.   Conclusion

After a thorough review of the record and the applicable case law, this Court finds that the Bankruptcy Court's interpretation of collateral estoppel and 11 U.S.C. § 523(a)(6) was correct, that its findings of facts were amply supported by the record evidence and not clearly erroneous, and that its application of the law to the facts was correct.

Accordingly, it is hereby **ORDERED** that the decision of the Bankruptcy Court is **AFFIRMED**.  The Clerk is **DIRECTED** to terminate all pending submissions and to **DISMISS** this appeal.

**SO ORDERED** this 9th day of March, 2021.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE